UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-CR-80068-ARTAU(s)(s)

UNITED STATES OF AMERICA,

Plaintiff,

vs.

YELYZAVETA DEMYDENKO, et al.

Defendants.
_______________________________________/

**GOVERNMENT'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE OF PURPORTED "DIMINISHED CAPACITY" AS TO DEFENDANT YELYZAVETA DEMYDENKO**

COMES NOW the United States of America, by and through the undersigned Assistant United States Attorney, and hereby submits for the Court's consideration the instant Government's Motion *In Limine* to Preclude Evidence of Purported "Diminished Capacity" as to Defendant Yelyzaveta Demydenko. For the reasons set forth below, it is submitted that preclusion is proper under Federal Rule of Evidence ("FRE") 401 because the any such evidence is irrelevant at the trial stage, and risks undue confusion of the jury.

## I. FACTUAL BACKGROUND

Svitlana Demydenko, age 54, is a native and citizen of Ukraine. On April 9, 2021, Svitlana Demydenko was admitted to the U.S. on a K1, nonimmigrant visa. On July 12, 2023, Svitlana Demydenko became a lawful permanent resident in the U.S. Yelyzaveta Demydenko, age 23, is a native and citizen of Ukraine, and is the daughter of Svitlana Demydenko. On April 9, 2021,

Yelyzaveta Demydenko was admitted to the United States (U.S.) on a K2, nonimmigrant visa. On July 12, 2023, Yelyzaveta Demydenko, became a lawful permanent resident in the United States.

On August 8, 2024, both women applied for Florida DMV-issued Learner's Permit cards at a Florida DMV office located in Palm Beach County, Florida. At that time, both women listed their place of birth as "Ukraine" and stated under oath that their "Citizenship Status" was "Immigrant," and not United States Citizen.

Only ten days later, on August 18, 2024, and without any intervening change in their immigration or citizenship status, records of the Florida Supervisor of Elections revealed that Yelyzaveta Demydenko and Svitlana Demydenko registered to vote online The fourth question on the on-line voter application form, and the first question under the "Eligibility" section asked "Are you a citizen of the United States of America?" both answered in the affirmative, claiming they were U.S. Citizens. Had they not done so, they could not have progressed past that question.

The Supervisor of Elections records revealed that Yelyzaveta Demydenko and Svitlana voted Demydenko on October 31, 2024 in the 2024 General Election, in Boynton Beach, Palm Beach County, Southern District of Florida. Said General Election was held solely or in part for the purpose of electing a candidate for the office of President, Vice President, Presidential elector, Member of the Senate, and Member of the House of Representatives.

On April 25, 2025, Law Enforcement conducted a consensual interview of Yelyzaveta and Demydenko Svitlana Demydenko at their residence. Yelyzaveta Demydenko confirmed that she had registered to vote online. Yelyzaveta Demydenko said that she went with her step-dad and mother, Svitlana Demydenko to vote in November of 2024 at a library in Boynton Beach, Florida. Yelyzaveta Demydenko said that she had to show her ID to vote. Yelyzaveta Demydenko provided law

enforcement with her voter registration card and stated that she voted in the election because she wanted to make a difference.

On May 7, 2026, a grand jury sitting in West Palm Beach returned a Second Superseding Indictment charging: Yelyzaveta Demydenko in Count 1 with a violation of Title 18, United States Code, Section 1015(f),[1] in that "On or about August 18, 2024, . . . YELYZAVETA DEMYDENKO, an alien, did knowingly make a false statement and claim that she was a citizen of the United States in order to register to vote and to vote in any Federal, State, and local election (DE 76, at 1);" and in Count 3, with a violation of Title 18, United States Code, Section 611(a),[2] in that "On or about October 31, 2024, . . . YELYZAVETA DEMYDENKO, an alien, did knowingly vote in an election held in part for the purpose of electing a candidate for the office of President, Vice President, and Member of the House of Representatives (DE 76, at 2)."

## II. **ARGUMENT**

Based on statements made by Yelyzaveta Demydenko's counsel to the government, as well as based upon receipt of a document from defense counsel styled "Psychoeducational Evaluation," prepared by Licensed School Psychologist Terry Mattingly, Ed., citing an evaluation date of

[1] Title 18, United States Code, Section 1015(f) provides in pertinent part as follows:

> (f) Whoever knowingly makes any false statement or claim that he is a citizen of the United States in order to register to vote or to vote in any Federal, State, or local election (including an initiative, recall, or referendum) -- Shall be fined under this title or imprisoned not more than . . . years, or both.

[2] Title 18, United States Code, Section 611(a) provides in pertinent part as follows:

> (a) It shall be unlawful for any alien to vote in any election held solely or in part for the purpose of electing a candidate for the office of President, Vice President, Presidential elector, Member of the Senate, Member of the House of Representatives, . . . .

11/18/2025,[3] that Yelyzaveta Demydenko intends to present a defense of "diminished capacity" at trial of this matter. Defense counsel had further advised government counsel that he does not intend to pursue a defense of insanity.

It is respectfully submitted that for the reasons set forth below, that this defense in legally prohibited in the trial context, and seeks through the instant Motion *in Limine* for this Honorable Court to preclude the presentation of this inflammatory testimony and defense at trial on the basis that it is irrelevant and would serve no purpose but to impermissibly prejudice or confuse the jury.

**A. Diminished Capacity Is Not an Available Defense In This Case**

The starting point in evaluating the proffered expert psychological evidence is the Insanity Defense Reform Act of 1984 (the "IDRA"), enacted in 1984. Pub.L. No. 98-473, Title II, § 402(a), 98 Stat. 1837, 2057, § 20. The IDRA reads, in relevant part: "It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense." 18 U.S.C. § 17(a) (emphasis added).

In enacting this legislation, Congress sought to achieve several principal objectives, including: (1) the elimination of any form of legal excuse based on a defendant's lack of volitional control, (2) the preclusion of defenses based on "diminished responsibility" and similar theories through which defendants had previously sought to excuse or justify their conduct by relying on

[3] For the Court's information, a copy of this report designated Government's Exhibit (GX) 1 shall be conventionally filed under seal together with a copy of the government's expert Forensic Psychologist, Rodolfo A. Buigas, Ph.D.'s, Forensic Evaluation Report of defendant Yelyzaveta DEMYDENKO under seal as GX 2.

evidence of a mental impairment, and (3) the reduction of dangers posed by expert testimony regarding inherently malleable psychological concepts, which could be misused to mislead and confuse juries in criminal cases. *See, e.g., United States v. Cameron*, 907 F.2d 1051, 1061-62 (11th Cir. 1990). The defenses eliminated by the IDRA include "diminished capacity," "diminished responsibility," "mitigation," and "justification." *See id.* at 1061-62, 1066-67; *United States v. Pohlot*, 827 F.2d 889, 890, 905 (3d Cir.1987).

It is acknowledged that the IDRA "does not preclude a defendant from submitting mental health evidence for the purpose of rebutting the prosecution's proof of the *mens rea* element of a specific intent crime." *United States v. Dupre*, 462 F.3d 131, 137 (2d Cir.2006)(emphasis added). However, the two counts charged against Yelyzaveta Demydenko in the Second Superseding Indictment are both general intent offenses, and it is well-settled case law in the Eleventh Circuit, and the majority of other Circuit Courts of Appeal, that the "'diminished capacity defense' is not available to an offense charged under a "general intent statute." *United States v. Ettinger*, 344 F.3d 1149, 1160 (11th Cir. 2003); *see also id.*, at 1157; *United States v. Cameron*, 907 F.2d 1051, 1063 n. 20 (11th Cir.1990) ("Psychological evidence is relevant to *mens rea* only when the defendant is charged with a specific intent crime."); *United States v. Gonyea*, 140 F.3d 649, 650, 654 (6th Cir. 1998)("In the federal courts, diminished capacity may be used only to negate the mens rea of a specific intent crime . . . . In summary, we hold that the first paragraph of § 2113(a) [bank robbery] is a general intent crime. Because diminished capacity is not a defense to general intent crimes, the district court did not err when it declined to allow defendant to assert that defense."); *United States v. Ricketts*, 146 F.3d 492, 497 (7th Cir. 1998)[4](citing *United States v. Reed*, 991 F.3d 399, 400 (7th

[4] As the Seventh Circuit observed in the *Ricketts* case:

Cir. 1993) ("diminished capacity . . . is a defense only to specific intent crimes.")); *United States v. Brown*, 326 F.3d 1143, 1147 n.2 (10th Cir. 2003)("The use of psychological or psychiatric evidence to negate an element of the government's case is limited to offenses requiring proof of specific intent."); *United States v. Pohlot*, 827 F.2d 889, 897 n. 4 (3d Cir.1987)("Most states, however, limit psychiatric evidence to specific intent crimes on the theory that mental abnormality can virtually never disprove the *mens rea* required for general intent crimes so that psychiatric evidence would be misleading."); *Gumbs v. United States*, 2024 WL 4720277, at *10 n.9 (N.D. Ga. 2024)(unpublished)("Diminished capacity is not a permitted defense for a violation of 18 U.S.C. § 111 because that statute is a general intent crime." (citing *Ettinger*, 344 F.3d at 1160)); *Bohannon v. United States*, 2010 WL 749329, at *2 (S.D. Ala. 2010)("Evidence of diminished capacity is potentially admissible only if the crime is one of specific intent and not general intent." (citing *Ettinger*, 344 F.3d at 1149, 1153)).

In this regard, the government notes that in *United States v. Knight*, 490 F.3d 1268 (11th Cir.), *cert. denied*, 522 U.S. 1016 (2007), the Eleventh Circuit held Title 18, United States Code, Section 611 to be "a general intent crime." *Id*. at 1272. Thus, it is respectfully submitted that binding Circuit precedent is dispositive in precluding that defense as to Count 3 of the Second Superseding Indictment.

---

> Diminished capacity, applying as it does only to specific intent crimes, is an extremely limited defense. Intent to commit a crime is almost always a question of fact for the jury to decide based on the life experiences and common sense of its members. Most medical experts, including psychiatrists, are rarely able to make meaningful contributions that can properly guide jurors in this task.

146 F.3d at 498.

Thus, the only remaining question is whether the Title 18, United States Code, Section 1015(f) (hereinafter "Section 1015(f)") violation alleged in Count 1, is similarly classified as a general intent crime.[5] The government respectfully submits that Section 1015(f) is clearly a general intent crime for the following reasons: First, as the Eleventh Circuit held in *United States v. Campa*, "The silence of the statute is dispositive: 'Where no specific intent element is apparent on the face of the statute, the crime is one of general intent.'" 529 F.3d 980, 999 (11th Cir. 2008)(quoting *Ettinger*, 344 F.3d at 1158)); *see also Dixon v. United States*, 548 U.S. 1, 5 (2006) ("unless the text of the statute dictates a different result, the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense"). As the Eleventh Circuit stated in *Knight*: "As a general intent crime, the government must ... prove that the defendant knowingly engaged in the conduct prohibited by [the statute]." *Knight*, 490 F.3d at 1271. And in this case, the charge set forth in Count 1 requires only that Yelyzaveta Demydenko knowingly made a false statement as to her citizenship to register to vote or to vote in a federal election.

The Supreme Court has stated that " 'knowledge' corresponds loosely with the concept of general intent." *United States v. Bailey*, 444 U.S. 394, 405 (1980); *see also United States v. DeAndino*, 958 F.2d 146, 148 (6th Cir.), *cert. denied*, 505 U.S. 1206 (1992) (applying the rule of construction that, if a criminal statute does not specify a "heightened mental element," such as specific intent, general intent is presumed to be the required element); *accord United States v. Lewis*, 780 F.2d 1140, 1143 (4th Cir.1986) (in the absence of an explicit statement that the crime requires specific intent, assault within the maritime and territorial jurisdiction of the United States requires

---

[5] Research has failed to discover any case in this Circuit or elsewhere deciding the issue as to Section 1015(f).

only general intent); *United States v. Nelson*, 733 F.2d 364, 370–371 (5th Cir.1984) (courts should not presume that a statutory crime requires specific intent in the absence of language to that effect).

Second, several factors clearly indicate that Congress intended Section 1015(f) to require a showing only of general intent. First, multiple other sections of Section 1015 specifically contain the "with intent to,"[6] language, but section (f) notably does not. Where Congress "intend[s] to legislate a specific intent crime," the statute typically uses the phrase "with the intent to." *United States v. Meeker*, 527 F.2d 12, 14–15 (9th Cir. 1975). As the *Meeker* court explained:

> By its language, section 1472(j) [interference with flight crew] applies to anyone who "assaults, intimidates, or threatens . . . so as to interfere with the performance" of duties. If Congress had intended to legislate a specific intent crime, the statute probably would have said "with the intent to" interfere rather than "so as to" interfere. The wording of the statute does not require a specific intent to interfere with the performance of the crew.

*Id*., at 14. Significantly, no lesser authority than the Eleventh Circuit Court of Appeals applied the *Meeker* court's reasoning and rules of construction in *United States v. Grossman*, 131 F.3d 1449 (11th Cir. 1997), holding the statute at issue to be a general intent crime, stating:

> Section 46504 [of Title 49, United States Code] was enacted in 1994, before the conduct in this case occurred, and it replaced 49 U.S.C. § 1472(j), which prohibited assaulting, intimidating, or threatening any crew member or flight attendant "so as to interfere with the performance by such member or attendant of his duties or lessen the ability of such member or attendant to perform his duties." . . . .
>
> There are no appellate court decisions addressing the intent issue as it relates specifically to the language of § 46504, but in their briefs the parties seemed to agree that the issue has not changed since § 46504 replaced § 1472(j). There is no indication of any congressional intent to change the meaning of the statutory language as it

---

[6] *See* Title 18, United States Code, Section 1015(b)("(b) Whoever knowingly, with intent to avoid any duty or liability imposed or required by law, denies that he has been naturalized or admitted to be a citizen, after having been so naturalized or admitted (emphasis added)) and 1015(e)(" (e) Whoever knowingly makes any false statement or claim that he is, or at any time has been, a citizen or national of the United States, with the intent to obtain on behalf of himself, or any other person, any Federal or State benefit or service, or to engage unlawfully in employment in the United State

> relates to this issue. In any event, the two circuits that have addressed specific intent arguments relating to § 1472(j) both held that it was a general intent crime. *See United States v. Meeker*, 527 F.2d 12, 14 (9th Cir.1975); *United States v. Compton*, 5 F.3d 358, 360 (9th Cir.1993); *United States v. Hicks*, 980 F.2d 963, 974 (5th Cir.1992).
>
> The Ninth Circuit in *Meeker* reasoned that, if Congress had intended to legislate a specific intent crime, the statute would have said "with the intent to" interfere rather than "so as to" interfere. 527 F.2d at 14. . . .
>
> The Fifth Circuit essentially followed this same reasoning in *Hicks*, 980 F.2d at 974, where it held that there was no requirement that the defendant acted with specific intent to interfere.
>
> Based on the plain language of the statute and the decisions of our sister circuits, we hold that § 46504 does not require any showing of specific intent; instead, it defines a general intent crime.

*Grossman*, 131 F.3d at 1451-52; *see also United States v. Olvera*, 2025 WL 2837395, at *7 (11th Cir. Oct. 5, 2025)(unpublished)("In light of the above, the instruction that "[t]he Government does not have to prove that the Defendant acted with the intent to intimidate the flight attendant or acted with the intent to interfere with her performance of her duties" is a correct statement of law. *See Grossman*, 131 F.3d at 1451–52. Further, because the district court's instructions required the jury to find that Olvera acted knowingly, which is consistent with § 46504's general intent requirement, it did not lessen the government's burden of proof. Thus, taken together, the jury instructions accurately stated the law, and there is no basis for reversal.").

Here, it is submitted there is no meaningful legal distinction difference between the phrase "so as to" in 49 U.S.C. § 46504, and Section 1015(f)'s "in order to" register to vote or to vote. The phrases literally mean the same thing. Indeed, one phrase could be substituted for the other in either statute, and the end result would be the same. Accordingly, taken together with Congress's clear and manifest intent to make certain *other* prongs of Section 1015 specific intent crimes by inclusion of the classic phrase "with intent to," the government respectfully submits that the foregoing

conclusively demonstrates that Section 1015(f) is a general intent crime, and that accordingly evidence of the supposed "diminished capacity" of defendant Yelyzaveta Demydenko is thus irrelevant and should be precluded.

### B. Alternatively, the Proposed Diminished Capacity Evidence Should be Excluded On Other Grounds

Alternatively, if for some reason the Court should conclude that Section 1015(f) is a specific intent offense, it is submitted the purported "diminished capacity" evidence sought to be introduced here should still be excluded for the following reasons, to include Federal Rules of Evidence 401 and 403[7]: As acknowledged above previously, the Eleventh Circuit has held that "'psychiatric evidence is still admissible where it negates the *mens rea* of a specific intent crime.'" *United States v. Litzky*, 18 F.4th 1293, 1303 (11th Cir.2021)(quoting *United States v. Bates*, 960 F.3d 1278, 1288 (11th Cir. 2020)). However, the Eleventh Circuit has stressed that such evidence is permitted only in rare and narrowly defined circumstances because of the high likelihood that it will result in the resurrection of precisely the kinds of defenses that the IDRA was enacted to prohibit. *See, e.g., Cameron*, 907 F.2d at 1066 ("Otherwise, the insanity defense will be improperly resurrected in the guise of showing some other affirmative defense ... which would serve to excuse the offense and open the door, once again, to needlessly confusing psychiatric evidence."); *United States v. Pohlot,* 827 F.2d 889, 905 (3d Cir. 1987), *cert. denied*, 484 U.S. 1011 (1988)(noting the "strong danger of misuse" in this area and stating that "[n]otions of intent, purpose and premeditation are malleable and at their margins imprecise"); *see also United States v. Childress*, 58 F.3d 693, 730 (D.C.Cir.1995)("We share the

---

[7] Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed R. Evid. 403.

concern that evidence of general mental capacity not be used to persuade a jury that a defendant is not responsible for his deliberate and purposeful activity-this usage exceeds the bounds of mens rea evidence.").

Accordingly, in determining whether evidence of a mental impairment is admissible for this purpose, a defendant is required to demonstrate clearly, in advance of trial, that there is a direct link between such evidence and the specific *mens rea* that the Government must prove. *See United States v. Dupre*, 339 F.Supp.2d 534, 539 (S.D.N.Y.2004) ("Given that defendants are not foreclosed from presenting mental disease evidence towards the mens rea element of a charged offense, it is necessary to identify whether any elements of the charged offenses require the Government to prove intent in a way that could be meaningfully refuted by the type of mental disease evidence [the defendant] seeks to present."), *aff'd*, 462 F.3d 131, 137 (2d Cir.2006); *United States v. Brown*, 326 F.3d 1143, 1147 (10th Cir.2003)("The admission of such evidence will depend upon whether the defendant clearly demonstrates how such evidence would negate intent rather than 'merely present a dangerously confusing theory of defense more akin to justification and excuse.' " (quoting *Cameron*, 907 F.2d at 1067)); *see also United States v. Pirro*, 76 F.Supp.2d 478, 485 (S.D.N.Y.1999) (stating that "[m]ental disease evidence is generally excluded where no link is demonstrated between the evidence and the defendant's *mens rea*" ).

Here, as in the Eleventh Circuit's *Litzky* case, Yelyzaveta Demydenko's argument "still falls short" of admissibility because defendant's "Psychoeducational Evaluation" utterly "fail[s] to demonstrate how her psychiatric evidence would negate intent and not merely present a dangerously confusing theory of defense more akin to justification and excuse than a 'legally acceptable theory of lack of mens rea.' " *Litzky*, 18 F.4th at 1303 (quoting *Cameron*, 907 F.2d at 1067 (quoting *United*

*States v. Pohlot*, 827 F.2d 889, 906 (3d Cir. 1987))). Simply put, nothing in defendant's "Psychoeducational Evaluation" provides any legal excuse or justification for her having knowingly falsely represented herself to be a United States citizen at the time she committed the offense. Rather, such speaks to her being "socially awkward and noting she avoids social interaction, and she . . . does not like to be touched or hugged." GX 1, at 1. It also spends much time focused on her current "anxiety since her legal issues began in June 2025 (*id.*)." But as much could be said about any criminal defendant in federal court.

Accordingly, it is respectfully submitted that such opinion testimony from Terry Mattingly, Ed., does not rise to the level of appropriate evidence of "diminished capacity" and should be excluded before the jury since the only possible justification for such would be for the improper purpose of confusing and prejudicing the jury in hopes of engendering jury nullification. *See United States v. Funches*, 135 F.3d 1405, 1409 (11th Cir. 1998)("the jury enjoys no right to nullify criminal laws, and the defendant enjoys a right to neither a nullification instruction nor a nullification argument to the jury, the potential for nullification is no basis for admitting otherwise irrelevant evidence"); *see also United States v. Rushin*, 844 F.3d 933, 939-40 (11th Cir. 2016)("We have also held that district courts may constrain counsel from making arguments that encourage nullification" (citing *United States v. Trujillo*, 714 F.2d 102, 105 (11th Cir. 1983)); *United States v. Gorham*, 523 F.2d 1088, 1097–98 (D.C.Cir.1975) (affirming trial court's refusal to admit evidence bearing no legal relation to the charges but which might encourage a "conscience verdict" of acquittal), supplemented by, 536 F.2d 410 (D.C. Cir.1976); *United States v. Lucero*, 895 F. Supp. 1421, 1426 (D.Kan.1995) ("defendants are not entitled to present evidence which is irrelevant for any purpose other than to provoke finder of fact to disregard the law"); *United States v. Sinclair*, 2026 WL 1328315, at *5

(S.D. Fla. May 13, 2026)(Bloom, J.,)("Defendant may not raise arguments intended 'to improperly inspire a jury to exercise nullification.'" (quoting *United States v. Moss*, 297 Fed. Appx 839, 841 (11th Cir. 2008)); *cf. United States v. Horsman*, 114 F.3d 822, 829 (8th Cir.1997)(no violation of defendant's substantial rights where only possible deprivation suffered was possibility of jury nullification)).

**C. <u>Conditional Request for Hearing</u>**

It is respectfully submitted that if this Honorable Court finds that the charged violations of Title 18, United States Code, Sections 1015(f) in Count 1, and 611(a) in Count 3 of the Second Superseding Indictment, are "general intent crimes," that the "diminished capacity" evidence sought to be introduced is precluded by binding Circuit precedent as a matter of law, and accordingly such may be dealt with on the pleadings, and a hearing is unnecessary unless demanded by the defense. If the Court does not so conclude, however, it is submitted that a hearing would be helpful and necessary at which time the government would, in addition to argument, present the testimony of its forensic psychiatrist expert, Rodolfo A. Buigas, Ph.D, (*see* GX 2) to explain the gross deficiencies of the defense expert's examination of Yelyzaveta Demydenko, that in Dr. Buigas's opinion the defendant does not suffer from Autism, and did not suffer from diminished capacity at the time of the offense. Should the Court desire a hearing on this matter, it is respectfully requested that the parties be permitted at least 10 days' notice, so as to permit both the government and defense counsel to obtain the appearance of their respective expert witnesses before the Court.

## III. LOCAL RULE 88.9 CERTIFICATION

Since at least April 23, 2026, the government has been in consultation with defense counsel for Yelyzaveta Demydenko, Chris Haddad, Esq., concerning this matter and whether it was necessary for the government to file a motion *in limine* as to the anticipated defense presentation of "diminished capacity" evidence. Government counsel again contacted Mr. Haddad on August 25, 2026, and further telephonic discussions were held. However, and meaning no disparagement to Mr. Haddad in any way – who has been completely courteous and professional throughout such discussions -- the government has been unable to obtain a conclusive commitment from Mr. Haddad not to seek to introduce "diminished capacity" evidence in the trial of this matter. On June 24, 2026, the undersigned again contacted Mr. Haddad via email to determine whether he objected to the government's motion in limine, and as of time of filing on the evening of September 25, 2026, had received no response from Mr. Haddad. Based on Mr. Haddad's not agreeing that this evidence is precluded in this case, and so as not to delay the filing of the instant motion any longer, the government must conclude the defense objects to the instant motion.

## IV. CONCLUSION

In conclusion, for the forgoing reasons, the United States respectfully requests that the defendant be precluded from presenting any argument, testimony, or evidence regarding any alleged "diminished capacity defense" at trial of this matter.

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

BY: /s/ *John C. McMillan*

JOHN C. McMILLAN
ASSISTANT UNITED STATES ATTORNEY
Admin. No. A5500228
500 S. Australian Ave., Suite 400
West Palm Beach, FL 33401
Office: (561) 820-8711
Email: John.McMillan@usdoj.gov

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 24, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. According to the Court's website, counsel for all parties are able to receive notice via the CM/ECF system.

By: /s/ *John C. McMillan*
JOHN C. McMILLAN
ASSISTANT UNITED STATES ATTORNEY