UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 25-80068-CR-ARTAU

UNITED STATES OF AMERICA,

Plaintiff,

vs.

YELYZAVETA DEMYDENKO

Defendant.
_____________________________________/

**DEFENDANT'S RESPONSE TO MOTION IN LIMINE**

**COMES NOW**, Defendant **YELYZAVETA DEMYDENKO,** by and through her undersigned counsel, respectfully submits her Response to the Government's Motion in Limine and therefore states as follows:

Ms. Demydenko, the defendant herein, and her co-defendant Ms. Svitlana Demydenko are respectively charged with knowingly making a false statement and knowingly claiming U.S. Citizenship to vote in a federal election.

The Government has filed a motion in limine regarding the scope of admissibility of expert testimony by the defense.

The Government seeks an order in limine precluding Ms. Demydenko from presenting evidence of a Psychoeducational Evaluation diagnosing Ms. Demydenko with Autism Spectrum Disorder, Attention-Deficit Hyperactivity Disorder, Combined Type and Generalized Anxiety Disorder by Terry Mattingly, Ed.S.

In support of its motion in limine, the government argues: 1) introduction of any evidence of the above conditions would amount to "diminished capacity" evidence, which is not permitted in offenses such as the offenses at issue in the case at bar, that only require a general intent. 2) any

such testimony would be irrelevant and impermissibly prejudice or confuse the jury 3) evidence of mental impairment is only admissible where a defendant can directly link such evidence to the specific *mens rea* that the Government must prove. 4) the defense cannot seek to improperly influence the jury through the introduction of confusing and prejudicial testimony with the hope of obtaining a jury nullification.

Diminished capacity evidence is evidence of lowered mental capacity that is introduced for the purpose of negating the specific intent requirement of a particular charged offense. Criminal culpability typically requires both an *actus reus* and a *mens rea*. *See City of Grants Pass, Or. V. Johnson*, 603 U.S. 520, 545 (2024).

The two counts charged in the Second Superseding Indictment are both general intent crimes. It is well-settled that the 'diminished capacity defense' is not available to an offense charged under a "general intent statute." *United States v. Ettinger*, 344 F.3d 1149, 1160 (11th Cir. 2003). In *United States v. Knight*, 490 F.3d 1268 (11th Cir., *cert. denied*, 522 U.S. 1016 (2007), the Court held that Title 18 United States Code, Section 611 (Count 3 against Demydenko) was a "general intent crime." Thus, diminished capacity is precluded as a defense.

Title 18, United States Code, Section 1015 (f) (Count 1 against Demydenko), has not been ruled upon to be a general intent rime in this Circuit or any other Circuit. The Government argues that notwithstanding this fact, that this Court should find Section 1015 (f) to be a general intent crime, because the statute is silent as to any specific intent requirement, and that the government is only required to prove that the defendant knowingly engaged in the prohibited conduct, , or stated otherwise, knowingly engaged in the conduct p-prohibited by the statute. *See Knight*, 490 F.3d at 1217.

The Government relies on Supreme Court precedent that 'knowledge' corresponds loosely with the concept of general intent. *See United States v. Bailey*, 444 U.S. 394, 405 (1980). Further, they cite to 6th Circuit and 4th Circuit holdings that if a criminal statute does not specify a "heightened mental element," such as specific intent, general intent is presumed. *See United States v. DeAndino*, 958 F.2d 146, 148 (6th Cir.), *cert denied*, 5055 U.S. 1206 (1992); accord United States v. Lewis, 780 F.2d 1140, 1143 (4th Cir. 1986).

Further, the Government argues that legislative intent supports the finding that Congress intended Section 1015(f) to merely require a showing of general intent. In support, the Government points to the fact that where multiple sections of Section 1015 contain the language "with intent to", section (f) is devoid of this language. Secondly, the Government cites to *United States v. Meeker*, 527 F.2d 12, 14-15 (9th Cir. 1975), a case interpreting the language of section 1472 (j) a statute prohibiting interference with a flight crew. In concluding that the statute was a general intent one, the *Meeker* court noted that operative language in the statute stating "so as to interfere" rather than "with intent to" interfere, supported the finding that the statute's wording established no specific intent requirement existed. Further, the Government contends that the Eleventh Circuit adopted similar reasoning in *United States v. Grossman*, 131 F.3d 1449 (11th Cir. 1997) finding the statute at issue to be a general intent statute where other Circuits had held that, if Congress has intended to legislate a specific intent crime, the statute would have said "with intent to" interfere with rather than :so as to" interfere with.

Finally, the Government argues that although no Circuit has held Section 1015 (f) to be a specific intent statute, the phraseology used in 49 U.S.C. § 46504 ("so as to") and Section 1015 (f) (in order to), are identical in meaning. Thus, where other sections of Section 1015 (f) contain

the inclusion "with intent to" and Section 1015 (f) reads in order to", Section 1015 (f) is a general intent statute.

The Government alternatively seeks exclusion of any Diminished Capacity evidence because even where psychiatric evidence is offered to negate *mens rea*, such psychiatric evidence is permitted only where it negates the *mens rea* of a specific intent crime. See *United States v. Litzky*, 18 F. 4th 1293, 1303 (11th Cir. 2021). Thus, the Government contends that evidence of mental impairment is admissible only where a direct link between such evidence and the specific *mens rea* the Government must prove. *See United States v. Dupre*, 339 F.Supp.2d 534, 539 (S.D.N.Y 2004).

The Government points to portions of the "Psychoeducational Evaluation" that refer to "social awkward[ness] and noting she avoids interaction, and she . . . does not like to be touched or hugged." And her "anxiety since her legal issues began in June 2025". To support exclusion of the expert testimony.

Ms. Demydenko agrees that under *Litzky*, 18 F.4th 1301, the determination of whether expert testimony is admissible, the proffered opinions, need to "focus on the specific state of mind of the accused at the time of the charged offenses, and show how (Demydenko] was unable to form the required *mens rea.* Otherwise, as the Government points out, the risk of confusing the jury is a real one. [1]

In *Litzky*, the defendant was accused of sending nude photographs of their children to her husband, after photographing them in graphic and pornographic positions. Litzky was evaluated

[1] Litzky was indicted for various child pornography charges, see 18 U.S.C. §§ 2251(a), (e), 2252A(b)(2), which are not specific intent crimes. See United States v. Duran, 596 F.3d 1283, 1292 (11th Cir. 2010) (holding that since the prohibition in 18 U.S.C. § 951 was "clear on its face" and required the defendants to act "knowingly," then only the mens rea of general intent was required and "ignorance of the law [was] no defense to a criminal prosecution"). Because specific intent is not necessary under 18 U.S.C. § 2252A, Davis does not apply. United States v. Walden, D.C. Docket No. 2:09-cr-00073-MEF-TFM- 1, No. 11-10570 (11th Cir. May 03, 2012)

by a psychologist, and the psychologist concluded that Litzky was intellectually disabled, and had a history of abuse and trauma inflicted upon her, that placed her in a position of extreme vulnerability without the necessary support system to protect herself and her children. The Psychologist concluded that "based upon a reasonable degree of psychological certainty, Litzky "would not have taken the pictures" if [her husband] hadn't requested them. In excluding the testimony, the court stated, "the problem [with] Dr. McClain's proffered opinions" is that they "do not focus on [Litzky's] specific state of mind at the time of the charged offenses." Because the testimony "fail[ed] to show how [Litzky] was unable to form the required *mens rea"* – and the evidence lacked "an adequate foundation" – the testimony was excluded as irrelevant and confusing.

The mens rea element "is generally satisfied . . . by any showing of <u>purposeful</u> activity, regardless of its psychological origins." *Pohlot*, 827 F.2d at 904. (Emphasis added)

Although the Government cites to Circuit authority to suggest that the absence (silence) of language of intent, is convincing proof that Congress intended to dispense with *mens rea*, this arguments dispenses with the importance of requiring proof that one acts with sufficient knowledge to render them accountable for the consequences of their actions.

In *Rehaif v. United States*, 588 U.S. 225, 228–29 (2019) the Court applied the presumption that criminal statutes require a sufficient degree of knowledge to make a person legally responsible for the consequences of his or her act or omission. The Court held that convict a defendant, the Government must show that the defendant knew he possessed a firearm and that he knew he had the relevant status when he possessed it. As the Court goes on to say, an injury is criminal only if inflicted knowingly "is universal and persistent in mature systems of law as belief in freedom of

the human will and a consequent ability and duty of the normal individual to choose between good and evil." *Morisette*, 342 U.S. at 250.

In *Elonis v. United States*, 135 S. Ct. 2001, 192 L.Ed.2d 1, 575 U.S. 723 (2015), the Court held that where the defendant was convicted of violating a federal statute, 18 U.S.C. section 875(c) criminalizing the sending of threats by communication, the Government had to also show that the defendant was aware of the threatening nature of the communication. *See also Staples v. United States*, 511 U.S. 600 (1994) (Government required to show that one convicted for possessing a machinegun must also be proven to have known that the weapon he possessed had the characteristics that brought it within the statutory definition of a machinegun)

Thus, the question becomes whether Ms. Demydenko can establish a direct link between her mental impairment and the *mens rea* of her alleged crimes. In refutation of this claim, the Government cherry picks portions of the "Psychoeducational Evaluation" that refer to "social awkward[ness] and noting she avoids interaction, and she . . . does not like to be touched or hugged." The Government also points to her "anxiety since her legal issues began in June 2025". However, other portions of the evaluation show that Ms. Demydenko suffers from a rigidity and inflexibility in thinking which impacts understanding. She also struggles with focus distractibility, which can lead to an inattention to detail, and rushing through directions. The report states that as a result, she is likely to miss or skip over important information, misinterpret key information and make careless mistakes. These mental deficiencies are directly related to her diagnosis and are directly linked to the issue of whether the Government can prove more than the *actus rea* but also can prove the *mens rea*.

Therefore, the expert testimony does aid in making a direct link between the mental state, and the lack of *mens rea*, and this Court should allow the testimony at trial.

**WHEREFORE**, the Defendant, **YELYZAVETA DEMYDENKO,** respectfully requests that this Court enter an Order setting this matter for a hearing and allowing for the expert testimony of the Government and defense experts, and after conducting the hearing, enter an order allowing the introduction of the expert testimony of Terry Mattingly.

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via electronic mail via the PACER system on October 20, 2026.

Respectfully submitted,

CHRISTOPHER A. HADDAD
Attorney for Defendant
319 Clematis Street, Suite 812
West Palm Beach, FL 33401
(561) 832-1126

BY: _/s/ Christopher A. Haddad_
CHRISTOPHER A. HADDAD
Florida Bar Number: 0879592